Eastern District of Kentucky
FILED
OCT 21 2021
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 21-CR-024-DCR

UNITED STATES OF AMERICA                                      PLAINTIFF

V.                          **PLEA AGREEMENT**

LARRY A. CRUMP                                                DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 1951, Hobbs Act (Robbery); Count 3 of the Indictment, charging a violation of 18 U.S.C. § 2113(a) Bank Robbery; Count 4 of the Indictment, charging a violation of 18 U.S.C. § 924(c)(1) Possession of a Firearm in furtherance of a violent Crime; and Count 5 charging a violation of 18 U.S.C. § 922(g)(1) Convicted Felon in Possession of a Firearm. Pursuant to Rule 11(c)(1)(A) the United States will dismiss Count 2.

2. The essential elements of Count 1 are:

    (a) That the Defendant unlawfully obstructed, delayed and affected or attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce; and

    (b) that the Defendant obtained or attempted to obtain the property of another without that person's consent by the wrongful use of force, violence, or fear.

The essential elements of Count 3 are:

(a) That the Defendant unlawfully by force, violence or intimidation did take from the presence of a bank teller, United States currency;

(b) that the United States currency belonged to or was in the care, custody, control, management, or possession of a bank; and

(c) that the bank's deposits were insured by the Federal Deposit Insurance Corporation.

The essential elements of Count 4 are:

(a) that the Defendant, committed the crime charged in Count 3, that is Bank Robbery,

(b) that the Defendant did knowingly possess a firearm, and

(c) That the possession of the firearm was in furtherance of the crime charged in Count 4.

The essential elements of Count 5 are:

(a) That the Defendant, knew he had been convicted of a felony offense punishable by a term of imprisonment of one year or more,

(b) that the Defendant, following his conviction, knowingly possessed a firearm,

(c) that the firearm had a crossed state line prior to its possession by the Defendant, and

(d) that the Defendant knew he was a felon

3. As to Counts 1, 3, 4, and 5, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

a) On November 16, 2020, the Defendant entered the Check N Cash business located on Main Street in Mt. Sterling, Montgomery County, Kentucky in the Eastern District of Kentucky. (EDKY). Check N Cash is a business engaged in the cashing of monetary instruments and therefore engaged in interstate commerce. The Defendant produced a handgun and demanded money. The Defendant told the employee of the business not to hit the alarm or call anyone. The employee provided the armed Defendant approximately $900 in cash. The Defendant left the building and was last seen a short distance away. Officers responded to the scene and began to canvas the area. A video was obtained from a neighboring church which showed a black Toyota 4 door vehicle circling the parking lot before the robbery and then backing into a parking space behind the Check N Cash. The Toyota's license plate had been removed. The video depicted the Defendant exit the Toyota wearing the same clothing as the subject who robbed the Check N Cash. After the Defendant had robbed the Check N Cash the video depicted him running back to the Toyota and thereafter fleeing the scene. The Mt Sterling Police Department (MSPD) posted still shots from the video on their Facebook (FB) page.

b) On November 20, 2020, there was an emergency call which reported an armed bank robbery at Peoples Bank on Bentley Drive also in Mt. Sterling. The Peoples Bank deposits were insured by the Federal Deposit Insurance Corporation (FDIC). Witnesses reported that a male white in dark jacket and mask had just committed an armed bank robbery and had fled in a black 4 door vehicle. This description was similar to the description of person who robbed the Check N Cash. The subject was later identified as the Defendant. One of the clerks described that she had just assisted a customer in the drive thru. When she turned around, the Defendant produced a pistol and demanded money. The clerk gave the robber a plastic tote that belonged to the Peoples Bank that contained $37,000 in cash.

3

(c) The black Toyota was subsequently identified as belonging to the Defendant's mother. Still photos from the Peoples Bank were obtained and placed on the MSPD's Facebook page. Several witnesses identified the Defendant from the FB photos that were posted. Local law enforcement obtained a search warrant for the vehicle and an arrest warrant for the bank robbery of the Peoples Bank. The vehicle was located and it matched the vehicle from the robbery at Check N Cash and the bank robbery at Peoples Bank.

(d) On November 23, 2020, several witnesses called into the MSPD and advised that the Defendant had been spotted at the local Walmart. The Defendant was located and was placed under arrest. On November 24, 2020, MSPD and ATF personnel went to the local Walmart in reference to a report of a firearm found in a back storage area by a section of pallets. Officers located a Kimber .380 firearm that had been reported stolen from Clay City, Kentucky on November 2, 2020. This Kimber matched the firearms seen on the videos from both robberies mentioned above. Further investigation determined that the firearm was used by the Defendant to commit both robberies. Upon examination it was determined that the pistol functioned properly and was readily capable of discharging a projectile by means of an explosion and therefore met the federal definition of "firearm." Additionally, the firearm was manufactured outside the state of Kentucky and therefore traveled in interstate commerce prior to coming into the possession of the Defendant. The Defendant admits that he has one or more prior felony convictions punishable by a term of imprisonment of one year or more and he was prohibited from the possession of a firearm.

(e) A review of the Defendant's jail phone calls and subsequent interviews of the Defendant's relatives determined that the Defendant had taken some of the money from the People Bank robbery in a bag over to the residence of Garry Crump. Ultimately, $9,000 plus an additional $16,500 was recovered from Garry Crump's residence that can be determined came from the People's Bank robbery. This is a total recovery of approximately $25,500.

(f) The Defendant admits that the United States can prove that he did by force violence and intimidation rob the Check N Cash business and the People's Bank of Mt. Sterling. Additionally, the Defendant did use a firearm to commit the crime of violence (Bank Robbery) of the People's Bank of Mt. Sterling.

4. The statutory punishment for Counts 1 and 3 is imprisonment of not more than 20 years, a fine of $250,000 and a term of supervised release of not more than 3 years. The minimum mandatory statutory punishment for Count 4 is not less than 5 years imprisonment, but not more than Life Imprisonment, a $250,000 fine, and not more than 5 years supervised release, consecutive to a term of imprisonment for Count 3. **If the firearm was brandished: Not less than 7 years imprisonment, but not more than Life imprisonment, not more than a $250,000 fine, and not more than 5 years supervised release consecutive to a term of imprisonment for Count 3.** The maximum statutory punishment for Count 5 is not more than 10 years imprisonment, not more than a $250,000 fine, and not more than 3 years supervised release. There is a mandatory special assessment of $100 per count that applies.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

> (a) United States Sentencing Guidelines (U.S.S.G.), November 2018 Manual, will determine the Defendant's guidelines range.
>
> (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery.
>
> (c) Pursuant to USSG § 2B3.1, the base offense level for Count 1 is 20.
>
> (d) Pursuant to USSG 2B3.1(a), the base offense level for Count 3 is also a 20. However, pursuant to 2B3.1(b)(1) the offense level is increased by 2

5

levels because the property of a financial institution was taken.

(e) Pursuant to U.S.S.G. § 2K2.4(b), the base offense level for Count 4 is 60 months, the "minimum term of imprisonment required by statute." If it is determined that **the firearm was brandished: Not less than 84 months imprisonment, consecutive to a term of imprisonment for Count 3.** The Defendant understands that the term of imprisonment under Count 4 must run consecutive to the term of imprisonment for Count 3. The Defendant reserves the right to object to this "Brandished" penalty if it is applied.

(f) Pursuant to U.S.S.G. § 2K.2.1(a)(4)(A), the base offense level for Count 5 begins at a level 20 as the Defendant committed the instant offense subsequent to sustaining one felony conviction for a crime of violence. The Defendant understands that under 2K2.1(b)(4) that he may be assessed a 2 level increase as the firearm was stolen. The Defendant further understands that under 2K2.1(b)(6)(B) he may be assessed an additional 4 level increase as he possessed a firearm in connection with another felony offense (Bank Robbery). The Defendant reserves the right to object to these two assessments if they are applied.

(g) Pursuant to USSG § 5E1.1, the minimum amount of restitution for business losses for Check N Cash is $900. The amount of loss incurred by the Peoples Bank is $37,000. This amount from the Peoples Bank is subject to change to a lower amount.

(h) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

6

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal any determination that he is an Armed Career Criminal ACC) and reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The parties agree that the total amount of restitution does not exceed the amount of $900 to the business Check N Cash and does not exceed the amount $37,000 to the Peoples Bank of Mt. Sterling.

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies,

property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit

reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
ACTING U.S. ATTORNEY

Date: 10/21/21      By: _____
                        Roger W. West
                        Assistant United States Attorney

Date: 10/21/21

_____
Larry A. Crump
Defendant

Date: 10/21/21

_____
Hon. Noah Friend
Attorney for Defendant

10